**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**
**6:25-cv-005-CHB**

| | |
|---|---|
| **SHANE PARKER I** | ) |
| **KRISTA HUNTER** | ) |
| **Plaintiffs,** | ) |
| | ) |
| **VS.** | ) |
| | ) |
| **[Judge#1 Cathy Prewitt], In** | ) |
| **their individual and official capacity** | ) |
| **as District Judge;** | ) |
| **[Judge#2 Fred White], in their** | ) |
| **individual and official capacity as** | ) |
| **District Judge;** | ) |
| **[Domestic Relations** | ) |
| **Commissioner's Robert Stephens], in** | ) |
| **their individual and official capacity as** | ) |
| **Domestic Relations Commissioner;** | ) |
| **[Third-Party's Brittney Parker];** | ) |
| **[Opposing Counsel's Eric Dixon Law** | ) |
| **Office], etc.; Josh Lowe;** | ) |
| **[Sheriff's Department Personnel,** | ) |
| **Bill Elliott];** | ) |
| **[District Attorney's Robert Hammons],** | ) |
| **in their individual and official capacity as** | ) |
| **Distract (sic) Attorney]; [Child Protective** | ) |
| **Services Personnel, Amy Keef, and** | ) |
| **Robert Thompson]; [Guardian Ad Litem,** | ) |
| **Nick Wilson]; [Kentucky Judicial** | ) |
| **Conduct Committee]; [Commonwealth** | ) |
| **Attorney Ronnie Bowling, in their** | ) |
| **individual and official capacity as** | ) |
| **Commonwealth Attorney];** | ) |
| **[Assistant Commonwealth Attorney,** | ) |
| **John Reynolds], in their individual** | ) |
| **and official capacity as Assistant** | ) |
| **Commonwealth Attorney];** | ) |
| **[Whitley County High School** | ) |
| **Administration], Matt Rifle and Jeremy** | ) |
| **Shopp;** | ) |
| **[Family Cabinet of Health and Services],** | ) |
| **Heather Carpenter;** | ) |
| **[Kentucky State Police Post #11],** | ) |

**Donnie Jones;** )
**[Laurel County Sheriff's Department],** )
**Gerg Pointer;** )
**[Circuit Court Clerk], Gary Barton;** )
**[Laurel County DCBS], Rayla Turner** )
**and Wade Strunk,** )
)
**Defendants.** )

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

This memorandum of law is submitted by the Defendant, Robert Hammons, individually and in his Official Capacity as Whitley County Attorney ("Defendant" or "Hammons)" and his employee child support enforcement case worker (Defendant Heather Carpenter), in support of their motion to Dismiss under FRCP 12(b)(6) and FRCP 12(h)(3) on the grounds that the Plaintiffs herein have failed to state a claim against them, for lack of subject matter jurisdiction, and that they are  entitled to judgment as a matter of law.

## STATEMENT OF FACTS

Being dissatisfied with his long- standing and continuing efforts (in Clark County and Whitley County Courts) to regain custody and avoid paying child support  Mr. Parker sued at least 22 separate individuals or offices.

According to the unverified Complaint, [1] the following allegations are made against the Defendant Whitley County Attorney[2] Robert Hammons, and his staff personnel, Heather Carpenter:

1.)     He "was "District (sic) Attorney" and the duly appointed and acting "District" (sic) Attorney, acting under the color of law as officials *within their respective capacities.* (Complaint para11) (Doc.#1, page #2).

2.)     "Defendant [Heather Carpenter] Double [sic] Mr. Parker's child support without proof of income helping the third party extort. Making Ms. Hunter pay child support and arresting her."  (Complaint para. 26 (Doc#1, page ID#4).

---

[1] The *unverified* "Complaint," purportedly filed by Shane Parker "pro se" on his own behalf but also apparently signed by him on behalf of his ex-wife, Krista Hunter states (in Complaint, para. 1, 2, 17, 19, 20) with sparse factual detail, but making repeated use of conclusory allegations: "The Defendants … have *conspired*…", have "engaged in *acts of conspiracy*" and "*intimidation* and *malicious* actions, *"colluded with "*and made alleged "*racial comments*," through (unspecified) actions without proper legal basis", and filing "baseless reports," all subjecting the Plaintiffs to (unspecified) discrimination based on race and sexual orientation and to "*extort*" and commit "*extortion*." It should also be noted, parenthetically, that the "Complaint" contains no discernable factual allegations, or dates, or times, when such occurred, other that the unsupported allegations in para. 15 of the Complaint that "on or about **[6/06/2022]** Plaintiff was deprived of their lawful parental rights through actions taken by the Defendants…. ".

[2] The office of County Attorney is a constitutional office provided for in the Kentucky Constitution (§99) ("At the regular election in nineteen hundred and ninety-eight and every four years thereafter, there shall be elected in each county…a County Attorney…); (§100) ("Qualifications of officers for counties and districts"); and by statute (K.R.S. §15.725(2)) ("The County Attorney *shall* attend the District Court in his County and prosecute *all* violations whether by adults or by juveniles subject to the jurisdiction of the regular or juvenile session of the District Court of criminal and penal laws…within the jurisdiction of said District Court") (See also - K.R.S. §15.730) ("Each regular Commonwealth's Attorney and county attorney shall be, ex officio, a special prosecutor of the Commonwealth and as such, shall perform such duties and render such services…as may be required by the Attorney General"); (K.R.S. §69.210) ("Duties of the County Attorney") ("The County Attorney shall…conduct all business touching the rights or interest of the county…").  See also, Legislative Research Commission, "*Duties of Elected County Officials*," Inf. Bulletin No. 114 (July 2016).

3.)    "Defendants [Sheriff's Department personnel] and [District Attorney] (sic),
[CPS], [Laurel County Sheriff's Department] and [Kentucky State Police Post #11], acting in
"their" *official capacity*, *failed to investigate* or *rectify* Plaintiff's allegations of custodial
interference and sexual abuse  and colluded with other state actors to deprive Plaintiff of their
parental rights. Violating procedural safeguards under KRS 620.050 (duties of the cabinet)."
(Complaint para. 20), (Doc#1, page ID#5).

4.)    "Heather Carpenter and DA (sic) Robert Hammons were aware of the extortion
and still set to help third party to extort parents. Violating KRS 514.080 (theft by extortion)
Proof of Doubling Child Support with no proof of income." (Complaint para 26), (Doc#1, page
ID#6).

5.) All Defendants' unspecified "collective action" amounted to collusion, extortion, a
conspiracy and intentional violation of his constitutional rights as a parent, for no discernable
reason (but alleged to be because of his *race* (African American) and *sexual orientation*
(unspecified), or to "exploit" and keep his son eligible for local sports. (Complaint para. 1, 13,
17, 20, 24, 26), (Doc#1, ID#'s 2, 4, 5, 6,7). Again, the conspiracy (without delineating *any* overt
act), was so vast and broad that it encompassed two judges, a domestic relations commissioner,
two prosecutors, an assistant prosecutor, the sheriff's office  of two counties (Whitley and
Laurel), the state police, a circuit court clerk, guardian ad litems and even the state Judicial
Conduct Commission.

6.)    The Defendants are otherwise severely hampered in attempting to divine the
Plaintiffs' claims due to a) a complete lack of clear factual allegations, b) the Plaintiff's reference
to multiple purported exhibits (EXHIBITS A-L) which **are not attached to the Complaint** or
**filed with the clerk.** c) the use of repeated unsupported legal conclusions, d) only Shane Parker

signed the Complaint (which he *can* "pro se" on behalf of himself, but which he *cannot* do for

Ms. Hunter) Aww Fed.R Civ. Proc. 11(a), See also, KRS 524.130 Unauthorized Practice of Law.

    7.) The Complaint offers no factual background dates, or even minimal detail, to support

*any* claim of racial discrimination (unspecified) or adverse employment treatment (or even of

employment) due to his alleged (unspecified sexual orientation), or discrimination in housing,

public accommodation, or on account of age or alleged disability.

    8.) The Complaint makes reference to various state agencies by way of erroneous

designation or misnomers (e.g. the "Cabinet for Health and Family Services" is listed as "Family

Cabinet of Health and Services," the Child Protection Branch- Cabinet for Health and Family

Services" is listed as the "Child Protective Services Personnel," the "Department for Community

Based Services- Cabinet for Health and Family Services" is listed as [Laurel County DCBS],

with named individuals but without designation of the capacity in which the individuals are sued.

    9.) On page 9 and 10 of the Complaint the Plaintiff(s) asserts the following alleged causes

of actions: Count I: Violation of Due Process (Fourteenth Amendment KRS 403.270, KRS

620.080), Count II Violation of Equal Protections (Fourteenth Amendment KRS 344.040), Count

III Conspiracy to Deprive Constitutional Rights (42 U.S.C. 1983 KRS 506.040), Count IV

Custodial Interference (KRS 509.070) and Count V Violation of Property Rights (Fifth and

Fourteenth Amendments KRS 511.030. All of these above counts reference "Defendants,"

without delineating which particular Defendants engaged in any particular conduct. (Complaint

para. 28-32)

    10.) In the Prayer for Relief a judgment is requested seeking this following relief:

    1. A **declaration** that Defendants violated Plaintiffs' constitutional rights under the Due

Process and Equal Protection Clauses of the Fourteenth Amendment;

'2. A **declaration** that Defendants violated Plaintiff property rights under the Fifth and Fourteenth Amendment.

3. **Injunctive relief** to restore Plaintiff's custodial rights and personal property;

4. Compensatory damages for emotional distress and loss of parental rights, financial losses, and irreparable harm to the parent-child relationship in the amount of: 25,000,000.00

5. Punitive damages for the Defendants' willful and malicious misconduct in the amount of: 50,000,000.00.

6. Non-economic damages for pain, suffering, torture, and loss of enjoyment of in an1ount of: 25,000,000.00

7. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

8. Such other and further relief as the Court deems just and proper.

Notably, the Prayer for Relief seeks action by this Court to: "… **restore Plaintiff's custodial rights**." (para 3, Prayer for Relief p. 10) and Compensation for… loss of parental rights…and irreparable harm to the parent-child relationship." (para. 4 _id_.)

11.) While Count III alleges a conspiracy to deprive Constitutional Rights, it is completely devoid of any specific facts or particularity. (para. 30, p. 9-10), stating merely that "Defendants conspired with each other and third parties to deprive Plaintiff of their constitutionally protected parental rights through intimidation, false accusations, and procedural misconduct." (_Id_.)

11) In paragraph 15 of the Complaint, the Plaintiff(s) allege that "on or about [6/6/2022], Plaintiff was deprived of their lawful parental rights through actions taken by Defendants…", thus making that date operative for statute of Limitations considerations. (para. 15, p. 4)

## APPLICABLE LAW
## AND
## ARGUMENT

The Defendant submits the following as an overview of the applicable law to serve as a backdrop against which this motion to dismiss must be viewed.

## 42 U.S.C. §1983

The principal federal statute under which Plaintiff has sued is (apparently) 42 U.S.C. §1983. That statute states, in relevant part, as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

While the text of the above statute provides that any state actor who violates a citizen's constitutional or federal rights can be sued in federal court, in the subsequent case of *Tenney v. Brandhove*, 341 U.S. 367 (1951), the Supreme Court held (Justice Frankfurter writing) that "We cannot believe that Congress…would impinge on [traditional immunities such as those provided judges and prosecutors] so well grounded in history and reason by covert inclusion in the general language" of the §1983 statute.

The High Court later held, in *Monroe v. Pape*, 365 U.S. 167 at 188 (1961) (overruled on other grounds by *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-691)(1978), that 42 U.S.C. §1983 "should be read against the background of tort liability." And in the subsequent case of *Pierson v. Ray*, 386 U.S. 547 (1967) the Supreme Court held that the "background of that

liability" referenced above specifically includes "common law defenses" *Id.* at 554-555 (noting that certain immunities were "so well established" at common law that Congress "would have specifically so provided had it wished to abolish" those defenses. One of those long-recognized defenses at common law is **absolute prosecutorial immunity**.

It should also be noted that Plaintiffs make (unspecified) allegations of discrimination based on race and sexual orientation, but does not allege an employment relationship or otherwise describe the context (housing, public accommodation, etc.) in which such allegations are made.(Complaint, para. 24 p.6).

### ABSOLUTE PROSECUTORIAL IMMUNITY

In *Imbler v. Pachtman*, 424 U.S. 409 (96 S. Ct. 984, 47 L. Ed. 2nd 128) (1976) the Supreme Court of the United States held that prosecutors, specifically including *state* prosecutors, performing core prosecutorial duties, are entitled to *absolute immunity*. The Court relied upon the text and legislative history of §1983, the precedent of the *Tenney* decision, supra, the long history in both this country and England of recognizing absolute immunity, the settled body of law concerning common law tort defenses and immunity, and well-recognized public policy considerations[3] supporting the rule. In doing so, the Court held that a state prosecuting attorney, performing an "advocative function" that is an "integral part of the judicial process," enjoys absolute immunity, both from §1983 liability, damages or associated tort liability for

---

[3] "The office of public prosecutor is one which must be administered with courage and independence. Yet how can this be if the prosecutor is made subject to suit by those whom he accuses and fails to convict? To allow this would open the way for unlimited harassment and embarrassment of the most conscientious officials by those who would profit thereby. There would be involved in every case the possible consequences of a failure to obtain a conviction. There would always be a question of possible civil action in case the prosecutor saw fit to move dismissal of the case. . . . The apprehension of such consequences would tend toward great uneasiness and toward weakening the fearless and impartial policy which should characterize the administration of this office. The work of the prosecutor would thus be impeded, and we would have moved away from the desired objective of stricter and fairer law enforcement." *Pearson v. Reed*, 6 Cal.App.2d 277, 287, 44 P.2d 592, 597 (1935), quoted in *Imbler v. Pachtman*, supra at 423, 424.

malicious prosecution and the like.  (*Id.* at 430-431).  Significantly, the Supreme Court specifically held that "An absolute immunity defeats a suit *at the outset*, so long as the official's actions were within the scope of the immunity."  *Imbler*, supra at 419, fn 13.

     *Imbler v. Pachtman* and its progeny have now recognized that "core" functions which are entitled to absolute immunity include, but are not limited to, the following:

    \*     **filing and pursuing criminal charges**, *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Pinaud v. County of Suffolk*, 52 F. 3d 1139 (2d Cir. 1995), even when done in bad faith.   *Shmueli v. New York*, No. 03-0287 (2d Cir. Sept. 15, 2005);

    \*     **presenting evidence before a grand jury**, *Hill v. City of New York*, 45 F. 3d 653 (2d Cir. 1995);

    \*     **advocacy at a preliminary hearing**, *Burns v. Reed*, 500 U.S. 478 (1991);

    \*     **accepting a plea bargain**, *Taylor v. Kavanagh*, 640 F. 2d 450 (2d Cir. 1981);

    \*     **retaining and preserving evidence pending a direct appeal**, *Parkinson v. Cozzolino*, 238 F. 3d 148 (2d Cir. 2001);

    \*     **advocating increased bail at a bail hearing**, *Pinaud v. County of Suffolk*, 52 F. 3d 1139 (2d Cir. 1995);

    \*     **exercising discretion or judgment as to the veracity of witnesses or sufficiency, materiality and reliability of evidence**, *Imbler v. Pachtman*, 424 U.S. 409, 424, 425 (1976).

    \*     **administrative or investigative acts (by a County Attorney or social worker), including advocating for the Commonwealth of Kentucky in pursuing child support** collection, *Smith v. O'Connell*, 2023 U.S. Dist. Lexis 92528 (2023)-(Judge Boom), *Lunsford v. Elsbernd*, 2012 U.S. Dist. Lexis 91220(2012)- Judge Bunning).

    The *Pachtman* Court expressly recognized *absolute* immunity over a lesser form of *qualified* immunity to avoid any deleterious or "adverse effect" upon the function of the criminal justice system.  *Pachtman* at 426.  This requires a "wide discretion" in the conduct of proceedings, the presentation of evidence, the determination of veracity of witnesses, and

materiality of evidence, and the exercise of judgment with respect thereto. *Id.* Subsequent boundaries set by the Court on absolute immunity limit application of the doctrine only to cases where the prosecutor acted, not as a prosecutor, but as an investigator removed from the judicial process (*Burns v. Reed*, 500 U.S. 478 (1991); or making a false statement at a press conference (*Buckley v. Fitzsimmons*, 113 S. Ct. 2606, 2614-15 (1993), or acting not as a prosecutorial "advocate" but in the role of an out-of-Court "administrator." (*Imbler* at 430, 431).

This Defendant submits that the only claims asserted factually against Hammons (and his child support enforcement case worker, Heather Carpenter) are entirely within their advocative role as a prosecutor, to process, monitor, analyze, and collect child support, and he and his staff is therefore entitled to absolute prosecutorial immunity under federal law. The two cases referred to above- *Smith v. O'Connell* and *Lunsford v. Elsbernd,* both applied Pachtman prosecutorial immunity to County attorneys, and their staff, in collecting child support on behalf of the Commonwealth.

## SOVEREIGN IMMUNITY AND ELEVENTH AMENDMENT IMMUNITY

Alternatively, or additionally, claim against Hammons and Carpenter should be dismissed based upon the sovereign immunity of the Commonwealth of Kentucky and the Eleventh Amendment to the United States Constitution.[4] As was referenced in some detail in footnote 2, infra, the Defendant Hammons, as Whitley County Attorney, occupies an office created by the Kentucky Constitution, and charged by statute with duties on behalf of both the county (a political entity and subdivision of the state) and of the state itself. There can therefore be no

---

[4] The Eleventh Amendment to the United States Constitution provides that, "The Judicial Power of the United States shall **not** extend to any suit in law or Equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State") (emphasis added).

doubt that Hammons is a "state official" within the meaning of the Eleventh Amendment. Carpenter is employed in his office as a child support enforcement case worker.

The Eleventh Amendment "bars suits for monetary relief against state officials sued in their official capacity" ("*Thiokol Corp. v. Dep't of Treasury*, State of Mich. Revenue Div., 987 F.2d 376, 381 (6th Cir. 1993); see also *Gottfried v. Med. Planning Servs., Inc*., 280 F.3d 684, 692 (6th Cir. 2002) ("[I]t is well established that states and state officers acting in their official capacities are immune from suits for Case: 16-6412 Document: 23 Filed: 12/01/2016 Page: 22 14 damages in federal court . . . .").  Where a county officer's duties "clearly flow from the State," the officer is a state official for purposes of Eleventh Amendment immunity.  *Gottfried v. Med. Planning Servs., Inc.*, 280 F.3d at 693 (holding county sheriff state official when enforcing state court injunction); cf. *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (holding county prosecutor state official when prosecuting state crimes); *Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009) (same); *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993) ("[A] city official pursues her duties as a state agent when enforcing state law or policy."); *Graves v. Mahoning County*, No. 4:10CV2821, 2015 WL 403156, *6 (N.D. Ohio Jan. 28, 2015) (holding township clerks acted as state officials when issuing arrest warrants pursuant to state statute), aff'd, 821 F.3d 772 (6th Cir. 2016); *Leslie v. Lacy*, 91 F. Supp. 2d 1182, 1194 (S.D. Ohio 2000) (holding county clerk acted as agent of state, not county, where relevant job duties specified by state law and subject to control of state).

Because an "official capacity" suit seeks damages from the entity for which the officer is an agent (See *Cady v. Arenac County*, et al., 574 F. 3d 334, 342 (6th Cir. 1993) and is therefore "to be treated as a suit against the entity" (See *Kentucky v. Graham*, 473 U.S. 159, 166 (U.S. S. Ct. 1995), "an official  - capacity suit against a state official is deemed a suit against the state and

is thus barred by the Eleventh Amendment, absent a waiver…" *Id.* at 342-344; *Scott v. O'Grady*, 975 F. 2d 366, 369 (7th Cir. 1992).

Hammons and his staff (Heather Carpenter) should therefore be dismissed as a defendant based upon the doctrine of state sovereign immunity and the Eleventh Amendment.

## STANDARD FOR REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. FRCP 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 335 U.S. 41, 47 (1957)). As the U.S. District Court, Eastern District of Kentucky (Judge Coffman) recently held in *Paul Carter v. Tom Porter, et al.*, U.S. Dist. Ct. E.D. Kentucky, civil action no. 08-246-JBC, "In order to avoid a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff has an obligation to **provide the grounds** for his entitlement to relief, which requires *more than **labels and conclusions**, and a **formulaic recitation of the elements of a cause of action will not do***. *Id.* at 1964 - 1965. (emphasis added). This does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is **plausible on its face**. (emphasis added), *Id.* at 1974. When ruling on a defendant's motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson*, 127 S.Ct. 2197 at 2200 (2007) (citing *Twombly*)." (emphasis added).

These Defendants, (and presumably others), have filed a motion to Dismiss under FRCP 12(b)(6) and FRCP 12(h)(3). For a complaint to survive such motions, the Sixth Circuit recently held, in *D'Ambrosio v. Marino*, 747 F.3d 378, (6th Cir. 2014):

"…it must — when the record is construed in the light most favorable to the nonmoving party and when all well-pleaded factual allegations are accepted as true—contain "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir.2013) (citation and internal quotation marks omitted). Still, this court **need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice**." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (citation and quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires **more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do**." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc*., 683 F.3d 239, 246–47 (6th Cir.2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Rather, '[**t]o survive a motion to dismiss, a complaint must contain sufficient *factual* matter, accepted as true, to state a claim to relief that is plausible on its face.'"** *Id*. at 247 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))." (emphasis added)

It should also be remembered that *Twombly, supra,* arose in the context of an alleged anti-trust *conspiracy*. Significantly, the high Court in *Twombly* held that mere statements of "parallel conduct," absent enough factual matter (taken as true) to suggest that an illegal agreement was actually made, are insufficient to withstand a FRCP 12(b)(6) motion to dismiss, even with conclusory statements alleging "conspiracy." *Twombly,* supra at 555-557. As to factually unsupported assertions of "conspiracy," the Supreme Court held, at p. 557, that, absent a more specific allegation – for example identifying a written agreement or even a basis for inferring a tacit agreement "…a court is not required to accept such terms as a sufficient basis for a complaint." Mere invocation of the *magic words* "conspiracy" or "conspired" is, without more facts, legally insufficient to render an alleged conspiracy claim "plausible." Of course, in *Iqbal, supra,* the Supreme Court extended the *Twombly* ruling to cases of *all* types in federal court (not just anti-trust cases) and held that bare allegations of *systemic wrongful* "policy" for illegitimate purposes were insufficient to survive a FRCP 12(b)(6) motion to dismiss. Significantly, the court held that in determining whether a Complaint states a "plausible claim for relief will

necessarily be a context – specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, supra at pp. 677-680.

The Complaint herein, even accepting factual allegations as true, is fatally deficient and should be dismissed.  There is absolutely no factual assertions concerning the "who, what, how, when and where" the alleged conspirators "conspired,"  "why" they would all do so, or "what" specifically, Hammons or Carpenter did to violate Parker/Hunter's constitutional rights.  See *Courtright v. City of Battle Creek*, et al., 839 F. 3d 513, 2016 WL 5956725 (6th Cir. 2016) ("The plaintiff must also allege *with particularity* 'facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'")  And there is certainly no showing or factual assertions alleging that prosecutor Hammons (or Carpenter) ever acted outside their role as a public official acting within the course and scope of their duties,[5] i.e. processing, monitoring, analyzing, enforcing and collecting child support. *See also*, United States v Wal-Mart Stores E., LP, 858 F. App'x 878, (6th Cir. 2021).

## STATE COMMON LAW CLAIMS

### I.    PLAINTIFF'S INADEQUATELY PLEADED STATE LAW CLAIMS ARE BARRED BY THE DOCTRINES OF SOVEREIGN (OR GOVERNMENTAL IMMUNITY) AND STATE ABSOLUTE PROSECUTORIAL  IMMUNITY, OR ALTERNATIVELY, LIMITATIONS; ABSTENTION

#### a.)    SOVEREIGN IMMUNITY REQUIRES DISMISSAL OF PLAINTIFF'S INADEQUATELY PLEADED STATE LAW CLAIMS.

Although not clearly pleaded Plaintiff apparently attempts to assert Kentucky state law claims in several paragraphs of the Complaint.  Though it is difficult to ascertain precisely what

---

[5] It should be noted that in the Complaint, para. 15 (Doc#1, page ID#4) the Plaintiffs make one of the only references to a specific date in the entire Complaints: 15. On or about **[6/06/2022]**, Plaintiff was deprived of their lawful parental rights through actions taken by the Defendants …".

those claims are alleged to be, or the facts to support them, it is presumed to be some type of custodial interference (Complaint para. 2, 15, 20) or false imprisonment (Complaint para. 17), or "extortion" (Complaint para. 26). All are barred by sovereign or governmental immunity.

Sovereign immunity is a long-settled common law concept that "... precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis*, 65 S.W. 3d 510, 517 (Ky. 2001). A county, as a political subdivision of the state, is cloaked with sovereign immunity or its alias, governmental immunity. *Lexington-Fayette Urban County Government v. Smolcic*, 142 S.W. 3d 128, 132 (Ky. 2004). Sovereign immunity also extends to state and county agencies that perform governmental functions and are supported by money from the state treasury. *Autry v. Western Ky. Univ.*, 219 S.W. 3d 713, 717 (Ky. 2007) (citing *Yanero*, *supra*). Sovereign immunity is not a creation of the courts and can only be waived by the General Assembly. *Smolcic*, *supra* at 132. Claims against individuals in their "official capacity" are barred by law, under the doctrine of governmental immunity. *Estate of Clark v. Daviess Co.*, 105 S.W. 3d 841, 844 (Ky. App. 2003)

Thus, Plaintiffs official capacity state law claims must be dismissed under applicable state law.

### b.) KENTUCKY STATE LAW ABSOLUTE PROSECUTORIAL IMMUNITY REQUIRES DISMISSAL

As under federal law, Kentucky Courts have held for some time that prosecutors are entitled to absolute immunity when acting as an advocate within the scope of prosecutorial duties. In *McCollum v. Garrett*, 880 S.W. 2d 530 (Ky. 1994), the Kentucky Supreme Court held:

> "On the question of prosecutorial immunity for malicious prosecution, Kentucky law is well expressed in *Dugger v. Off 2nd, Inc.,* Ky. App., 612 S.W.2d 756 (1981), wherein the Court of Appeals rejected a prosecutor's absolute immunity claim. Dugger was wrongfully arrested pursuant to a warrant charging him with

disorderly conduct. He alleged that the prosecutor signed the judge's name to the warrant and that the prosecutor's actions constituted gross negligence, wantonness, abuse of process and collusion since Dugger's wife was then being represented in divorce litigation by the prosecutor's law partner. The court correctly recognized that a public prosecutor must have immunity when he is acting within the scope of his authority for without it, the prosecutorial function would suffer. Nevertheless, the court examined the applicable constitutional and statutory provisions and concluded that as the prosecutor had no lawful authority to sign the name of a judge to an arrest warrant, he was outside the scope of his authority and without immunity. Throughout the *Dugger* opinion, one encounters the concept of "scope of prosecutorial duties," or words to that effect, as defining the availability of prosecutorial immunity. The opinion is clear that so long as a prosecutor acts within the scope of the duties imposed by law, quasi-judicial immunity is available, but otherwise it is not.

A recent decision of the Supreme Court of the United States *Buckley v. Fitzsimmons,* 509 U.S. 259, 270, fn. 4 [113 S. Ct. 2606, 2614, 125 L. Ed. 2d 209 (1993), is in accord with *Dugger.* Relying on its recent decisions in *Imbler v. Pachtman,* 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976), and *Burns v. Reed,* 500 U.S. 478, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1992), the Supreme Court recognized that certain actions of a prosecutor were necessarily preliminary to the initiation of a prosecution, but were nonetheless protected by absolute immunity. Such acts were said to include the professional evaluation of evidence assembled and appropriate preparation for its presentation at trial or to a Grand Jury. On the other hand, *Buckley* is clear that absolute immunity does not follow a prosecutor in all of his actions. On those occasions when a prosecutor functions as an administrator or investigator, prosecutorial immunity is limited to qualified immunity. Distinguishing between investigative and prosecutorial functions, the Court said:

The prosecutors do not contend that they had proper cause to arrest petitioner or to initiate judicial proceedings during that period. Their mission at that time was entirely investigative in character. A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.

*Buckley*, 113 S. Ct. at 2616. While *Buckley* is somewhat more explicit than *Dugger,* the result is the same. A prosecutor acting as such and in accordance with the duties of office as defined by Kentucky law should have absolute immunity. Otherwise, only qualified immunity is available. This view is consistent, we believe,

with this Court's decisions in *Mitchell v. Ripy*, 82 Ky. 516 (1885), and *Dixon v. Cooper*, 109 Ky. 29, 58 S.W. 437 (1900).

*McCollum*, pg. 534-35.

And in *Jefferson County Commonwealth's Attorney Office v. Kaplan*, 65 S.W. 3d 916 (Ky. 2001) Kentucky's highest Court held:

> These allegations occurred beyond the investigation phase of the case. Rather, the alleged failure to disclose evidence occurred at a point in time when the prosecutors were acting as advocates. Thus, we hold that the prosecutors are entitled to absolute immunity. See *Buckley v. Fitzsimmons,* 509 U.S. 259, 273-74, 113 S. Ct. 2606, 2616, 125 L. Ed. 2d 209, 226 (1993).

> Our holding reflects the policy decision made by this Court in *McCollum v. Garrett,* Ky., 880 S.W. 2d 530 (1994), in which we drew a distinction between a prosecutor's role as investigator and his or her role as an advocate for the Commonwealth:

> During the time in which [the prosecutor] essentially acted as an investigator, the protection available to him was qualified immunity. Upon the commencement of prosecution and the assumption of his role of prosecutor, [the prosecutor's] immunity became absolute. *Id.* at 535.

> In a case involving facts similar to those in the case at bar, the U.S. Supreme Court articulated why it made the same policy choice as we made in *McCollum* and reaffirm today:

> Suits that survived the pleadings would pose substantial danger of liability even to the honest prosecutor. The prosecutor's possible knowledge of a witness's falsehoods, the materiality of evidence not revealed to the defense, the propriety of a closing argument, and -- ultimately in every case -- the likelihood that prosecutorial misconduct so infected a trial as to deny due process, are typical of issues with which judges struggle in actions for post-trial relief, sometimes to differing conclusions. The presentation of such issues in a §1983 [civil] action often would require a virtual retrial of the criminal offense in a new forum… . It is fair to say, we think, that the honest prosecutor would face greater difficulty in meeting the standards of qualified immunity than other executive or administrative officials. Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were

made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials. *Imbler v. Pachtman,* 424 U.S. 409, 425-26, 96 S. Ct. 984, 992-93, 47 L. Ed. 2d 128, 140-41 (1976) (emphasis added). *Kaplan*, pg. 920."

Accordingly, Kentucky law requires the dismissal of the deficiently pleaded state law claims alleged in paragraphs 2, 15, 17 (Custodial interference) and 17 (false imprisonment) of the Complaint, extortion, or emotional distress (paragraph 23, also Prayer for Relief).

Furthermore, it should be noted that what (by simple "buzz-words") appear to be state common law claims included within the Plaintiff's §1983 suit (such as custodial interference, infliction of emotional distress, false imprisonment, extortion, civil conspiracy, etc.) have, as a matter of jurisdiction, been added, ostensibly under the Court's "supplemental jurisdiction." (Complaint, para. "I").  However, such claims are also subject to "absolute immunity" and, since federal courts are courts of limited jurisdiction, when a §1983 claim is dismissed, as on immunity grounds, federal jurisdiction evaporates, and the state law claims are subject to dismissal on immunity or jurisdictional (or other) grounds.  See 28 U.S.C. §13679(c)(3), (The Court "may decline to exercise supplemental jurisdiction over a claim," if the Court "has dismissed all claims over which it has original jurisdiction.")  In balancing whether to "decline to exercise supplemental jurisdiction" a Court should "take into account such factors as the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 158 (1997)).  However, the Sixth Circuit has held that "a federal court that has dismissed a plaintiff's federal - law claims should ordinarily *not* reach the plaintiff's state law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).  Federal Courts should therefore exercise such jurisdiction *sparingly* "to avoid needless decisions of state law." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007).

There are no compelling grounds for this Court to exercise supplemental jurisdiction over the purported state law claims in this case. The remaining claims would require this Court to consider and apply the relevant state law as to torts (or defenses) as different as custodial interference, false imprisonment, civil conspiracy and extortion and the statute of limitations. Multiple and perhaps conflicting defenses might arise among the defendants, as some, such as all the prosecutors, are entitled to absolute immunity, while others may have only qualified or no immunity at all. Procedural issues concerning possible separate trials, or the bifurcation of trial (or certain issues) may arise should any claims survive inevitable motions to dismiss. Additionally, as a matter of simple comity and wise use of judicial resources, the Court should simply decline to exercise supplemental jurisdiction.

### c.)    STATUTE OF LIMITATIONS (§ 1983/STATE LAW CLAIMS) REQUIRES DISMISSAL

Additionally, the **§**1983 claim and the purported state claims should be dismissed on limitations grounds. Since 42 U.S.C. §1983 does not include a limitations period, applicable state law statutes of limitation are "borrowed." *Johnson v. Memphis Light Gas and Water Div.*, 777 F. 3d 838, 843 (6th Cir. 2008). **K.R.S. §413.140** (**413.140 Actions to be brought within one (1) year states, in relevant part:** (1) The following actions **shall** be commenced **within one (1) year** after the cause of action accrued: *** (a) An action for an **injury to the person of the Plaintiff, or of … his child…**) (c.) an action for malicious prosecution, **conspiracy**, **arrest**…, (d.) (emphasis added); *Dunn v. Felty*, 226 S.W. 3d 68 (Ky. 2007) (One year statute began to run on date of arrest or arraignment); *Collard v. Kentucky Board of Nursing*, 896 F. 2d 179 (6th Cir. 1990) (holding one year statute of limitations for personal injuries applies to 42 U.S.C. §1983

claims); *Fox v. DeSoto*, 489 F. 3d 227 (6th Cir. 2007) (state law claims for false arrest and false imprisonment run from time of arrest). It should also be noted that the statute of limitations on a claim for "custodial interference," especially when presented in the context of a section 1983 claim is most analogous to claims referenced in the above statute.

Moreover, in the Sixth Circuit case of *Eidson v Tennessee Department of Children's Services*, 510 f3d 631 (2007)(applying Tennessee law) the Court upheld dismissal of a §1983 action based on removal of a child as untimely because not brought within one year of the date of removal of the child from parental custody when it was known, or should have been known, that there was at least a theoretical claim for the removal. See also, *Brown v. Univ. of Kentucky Comprehensive Assessment and Training Servs.*, No. 12-CV-123-KSF, 2013 WL 990423, at *6 (E.D. Ky. March 13, 2013), amended on reconsideration, No. 12-CV-123-KSF, 2013 WL 1687886 (E.D. Ky. April 18, 2013), aff'd (June 19, 2014)(citing *Minow v State of Tennessee*, 191 F3d 452, 1999 WL 776307, at *(6th Circuit 1999)(limitation begins to run when minor child is taken into state custody).

It should also be noted that the one year period of limitations found in KRS 413.140(1)(a) also applies to claims for alleged violations of the Kentucky Constitution. *Bruederle v. Louisville Metro Gov't*. No. 3:05-CV-818-S, 2007 WL 2462630, at *4 (W.D. Ky. Aug. 27, 2007) ("Bruederle's claim for violation of the Kentucky Constitution is also governed by § 413.140(1)(a).") (citing *Million v. Raymer*, 139 S.W.3d 914, 919 (Ky. 2004) ("We are of the opinion that application of the one-year statute of limitations period under KRS 413.140 for constitutional claims such as those made herein is consistent with federal law governing essentially the same types of claims.").

Here, in para. 15 of the Complaint the Plaintiffs affirmatively assert that they were **[on 6/06/22]** "deprived of their lawful parental rights through actions (allegedly) taken by the Defendants." Thus, the one-year statute ran no later than June 6, 2023, some 18 months before this suit was filed.

### d.)    ABSTENTION

It is will-settled that the Court may raise the possible need to abstain from exercising federal jurisdiction s*ua sponte*. *Hill v. Snyder*, 878 F3d 193, 206 n.3 (6th Circuit 2017). *Younger* abstention ( *Younger v. Harris*, 401 U.S. 37, 43-45 (197) is appropriate when:

1. There are ongoing state judicial proceedings;

2. Those proceedings implicate important state interest;

3. The state proceedings provide an adequate opportunity to raise constitutional challenges.

The Plaintiffs' Complaint does not specify dates whereby the Defendants allegedly violated their rights other than in para. 15 whereby it is alleged that "on or about **[6/6/22]**, Plaintiff was deprived of their lawful parental rights through actions taken by the Defendants …." (Complaint Doc#1, page I.D.# 4 of 11), but it may be inferred that there are at least some state judicial proceedings are on-going from the multiplicity of allegations concerning custody in the Complaint.

Indeed, according to the "FINAL ORDER" of the Whitley Circuit Court dated January 23, 2025 (attached hereto as **EXHIBIT "1"** and incorporated herein by reference – and of which this Court may take judicial notice) it is clear that state proceeding are *still on-going* to monitor Plaintiffs compliance with mandated attendance and completion of "in-person Domestic violence classes and Anger Management classes," possible amendment of state Domestic violence orders, follow-up requests for contact with the children and the possibility of appeal.

Such matters obviously implicate important state interests and also provide an adequate forum to raise constitutional challenges. As was held by the Sixth Circuit in *Eidson v. Tennessee Department of Children Services:* "Except in extraordinary circumstances federal courts should 'permit state courts to try state cases free from interference by federal courts'" *Younger v. Harris,* 401 U.S. 37, 43, 91 S. Ct. 746, 27 L. Ed2d 669 (1971). The underlying concern of *Younger* is the "threat to our federal system posed by displacement of state courts by those of the National Government" (citing *Moore v. Sims*, 442 U.S. 415, 423, 99 S.Ct. 2371, 60 C.§d. 994 (1979) noting that child custody and removal cases are subject to *Younger* abstention with federal courts having the option of either dismissing the case without prejudice or holding "the case in abeyance."

This entire case stems from Plaintiff's apparent dissatisfaction with state court proceedings which are on-going. Based on *Younger* and general principles of comity and federalism, the Court should abstain from proceeding with this case.

    **e.**    <u>Federal Courts have declined jurisdiction of State Custody Issues</u>

In <u>*Marshall v Caudill*</u> 2024 U.S. App. LEXIS, (6th Cir. 2024) Unpublished, appeal from E.D.K.Y., the Sixth Circuit upheld the dismissal of case involving state child custody issues holding:

> "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). We review de novo a district court's decision to dismiss a complaint for lack of subject-matter jurisdiction. See <u>*VanderKodde v. Mary Jane M Elliott, P.C.*</u>, 951 F.3d 397, 401 (6th Cir. 2020). Generally, courts liberally construe pro se pleadings and hold them "to a less stringent standard than pleadings prepared by attorneys." <u>*Frengler v. Gen. Motors*</u>, 482 F. App'x 975, 976 (6th Cir. 2012). But this liberal construction is not without limit. Id. at 977. Pro se plaintiffs must still comply with basic pleading standards [*5] and procedural rules. See <u>*Wells v. Brown,*</u> 891 F.2d 591, 594 (6th Cir. 1989). HN2[ ] "The domestic relations exception precludes federal courts from hearing cases that Involv[e] the issuance of a

divorce, alimony, or child custody decree."' *Alexander v. Rosen*, 804 F.3d 1203, 1205 (6th Cir. 2015) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 704, 112 S. Ct. 2206, 119 L. Ed. 2d 468 (1992)). It "applies only to a 'narrow range' of cases." Id. (quoting *Ankenbrandt,* 504 U.S. at 701). It will not foreclose federal-court jurisdiction "unless a plaintiff positively sues in federal court for divorce, alimony, or child custody, or seeks to modify or interpret an existing divorce, alimony, or child-custody decree." Id. (quoting *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 797 (6th Cir. 2015)).

Here Plaintiff(s) clearly "sues" in Federal Court by requesting in the Prayer for Relief that custody of the child be returned. (See Complaint, Prayer for Relief, p. 10,  para. 3). Thus the Court should decline jurisdiction. Alternatively, dismissal is appropriate as liberal construction is not without limits. Frengler v Gen. Motors, 482 F. Appx 975, 977 )6th Cir. 2012), and because "Pro Se Plaintiffs must still comply with basic pleading standards, and procedural rules. Wells v Brown, 891 F 2d, 594 (6th Cir 1989)

See also, Russell v Stark Cnty. Job & Fam. Servs. 2024 U.S. Dist LEXIS 10385, 2024 WL 216608 (N.D. Ohio) Holding:

> If federal jurisdiction exists in this case, it must be based on a claimed violation of federal law. In determining whether a claim arises under federal law, the Court looks only to the well-pleaded allegations of the Complaint. *Mikulski v. Centerior Energy Corp*., 501 F.3d 555, 560 (6th Cir. 2007). Plaintiff's claims for harassment, "privacy," false allegations, breaking and entering, falsifying police reports, defamation, slander arise, if at all, under state law. Discrimination could arise under state law or federal law; however, Plaintiff gives no indication of the factual basis for her discrimination claim. Therefore, the Court is unable to liberally construe a possible legal basis [*7] for this claim, given that the claim is stated in a single word, "Discrimination." That is not sufficient to establish federal subject matter jurisdiction. Moreover, child custody determinations are matters of state law. The Court lacks jurisdiction to return custody of her children to her or to award damages to her.

*See also*, *Alexander v. Rosen*, 804 F. 3d 1203-1208 (6th Cir. 2015) dismissing a domestic relations based case for failure to state a claim. *Id*.

## ADDITIONAL ARGUMENT (ALL COUNTS)

The Complaint is neither short nor plain.  It also suffers from a deficit of sufficient factual detail to make any of the claims asserted "plausible."  *Twombly*, supra.

Stripped of its conclusory allegations and extensive surplusage, the allegations in the Complaint simply show that Bob Hammons, as Whitley County Attorney (and his staff), had to process child support matters as a result of Parker's ongoing custody fight.  As was stated by the Court in *McDonald v. Hall*, 610 F2d 16, 19 (1st Cir. 1979) "While this Court has a duty to hold a *pro se* Complaint to less stringent standards than Complaints drafted by an attorney, *** the duty 'does not require [the Court] to conjure up unpled allegations.'"

## CONCLUSION

It is undisputed that Mr. Hammons, as Whitley County Attorney, and his staff are clothed with absolute prosecutorial immunity.  *Imbler v. Pachtman*, supra.  Under the sparse facts alleged in the Complaint Hammons and his staff are also immune under the doctrine of sovereign immunity, the Eleventh Amendment, state law prosecutorial immunity, and limitations, and are protected as well by the *Twombly* rules as to what constitutes a sufficiently pleaded Complaint.  The Complaint should also not be heard under the Abstention doctrine. The claims pleaded against him are deficient under *Twombly*, supra and *Iqbal*, supra.  All claims against Hammons and Carpenter should be DISMISSED, with prejudice.

RESPECTFULLY SUBMITTED,


s/Howard O. Mann
HOWARD O. MANN
LAW OFFICES OF HOWARD O. MANN, P.S.C.
104 N. KENTUCKY AVE.

Page 24

CORBIN, KENTUCKY 40701
TELEPHONE: (606) 528-0616
FACSIMILE: (606) 528-0709
EMAIL: hmannlaw@bellsouth.net

And

JASON E. WILLIAMS
WILLIAMS & TOWE LAW GROUP, PLLC
303 SOUTH MAIN STREET
LONDON, KENTUCKY 40741
TELEPHONE: (606) 877-5291
FACSIMILE: (606) 877-5294
jason@wftlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2025 I electronically filed the foregoing document with the United States District Court, Eastern District of Kentucky, London Division for the Sixth Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Shane Parker
415 Ellen Street
London, KY 40741

Krista Hunter
415 Ellen Street
London, KY 40741

s/Howard O. Mann
HOWARD O. MANN